We are here for our arguments this morning and our first case is Rebecca Woodring against Jackson County, Indiana 21-881 and we begin with Mr. do you pronounce it my hat me hit me hat me hat all right Mr. me have more is yours may please the court Horatio me hat on behalf of Jackson County and I would reserve five minutes for rebuttal this morning this court should reverse the district court's grant of final summary judgment because the plaintiff lacks standing and because the display is constitutional it is clear from the record in this case that the plaintiff lacks standing under Valley Forge and its progeny because she is merely an offended observer who has only a generalized grievance and a psychological injury even though this can I make you pause on that point I certainly understood that to be your argument from your brief but then looking at other materials in the case I was left with the impression that there were perhaps factual issues about this that you didn't see the same way as wood ring in your view you know she just drove in front of the courthouse and and I certainly take the point that at some point offended observer as on under Valley Forge isn't enough but when you start talking about the need to go to the prosecutor's office in the building just behind the historic courthouse and other kinds of legitimate business it it seems different so so I had a disputed issue of fact on standing feel about this I don't think that it's a material dispute that your honor because the record is clear and undisputed that none of those future exposure items that miss wood ring speculates about has actually happened prior to her filing of this complaint in fact the record is very clear that this display had been a constant feature of this community for nearly two decades and yet the record discloses only one actual exposure by the plaintiff to this display when you look at the fact mr. me had that she says in her affidavit that she drove by the front of the courthouse numerous times I understand she only specifically identifies seeing the display during her 2018 trip but can we draw the inference in her favor as we're required to do at summary judgment that when she drove by the courthouse those other times that she necessarily saw the display no I don't think so because she actually admits at her deposition that the first time and the only time that she saw the display was when she purposefully went there to actually inspect it for this lawsuit she leaves no doubt about that she says that in 2016 and 2017 she never noticed it and in 2018 she says on page 86 of her deposition that she was at by the courthouse or in Brownstown no fewer than 15 times and yet she only saw this display after she read about the controversy in the news and after she decided to purposefully go and check it out in fact mr. me had I mean I know there's the 15 times but when you look more carefully at the record it seems that some of the times she was describing were in August when the display wasn't up the display doesn't go up until around the middle or I mean that's why we have this stay motion in front of she doesn't see the display at a time when it's not up but actually if you look on page 86 of her deposition I asked her specifically between Thanksgiving and Christmas of 2018 how many times had she been at the courthouse and within that specific period when the nativity and the display would have certainly been up she says she was there and no fewer than 15 times that's page of her deposition and yet at the courthouse not driving by it there's that's that those are the that was in connection with the citizen function that she purports to to have to exercise in Brownstown and and if the claim is that those citizen functions would expose her in the future to the display what this court can do is look at the past prior to when she filed this this complaint and see that there's no actual record of of exposure and the other thing I would point out is that before you rush on to that I want to look for a second for example at Doe against City of Montgomery Illinois one of the things that we mentioned there was the need to come into direct and unwelcome contact that was with a sign while engaging in normal legal legal I'm not a former district court judge such as Judge St. Eve and Judge Hamilton but I'm here to tell you I am certain that jury duty doesn't happen once a week for normal citizens they get called every so often and yet we we focused on that and in her case it seems that she alleges that every so often she needs to follow up on this child support order and she's got business that takes her past the courthouse so there's a couple of things I would say to that judge would that number one she was very clear that she has no business in the past inside the courthouse and no anticipated business in the future inside the courthouse inside the courthouse is utterly beside the point however right this is what we're talking about is a standard that courts have applied throughout the country for direct unwelcome contact that's very different from Valley Forge of course right well you you emphasize in your brief that she's only lived in the county for two years I'm not sure why that's relevant but she is a resident of the county the courthouse is on US 50 and somebody who's doing going about their daily business in Jackson County is going to encounter it as she has and will in the future right the channel then respectfully the the Seventh Circuit and the Supreme Court have said that there's no such thing as drive-by standing which is what what we would have here no the stand the standard sir is direct and unwelcome contact that for example is what gave standing to the plaintiffs in the American Legion case correct actually standing was not addressed in the American Legion case it was addressed in the Fourth Circuit however and that was the standard it drew on a very thoughtful opinion by Judge Wilkinson from a few years earlier Schumer against Haywood County that explains this this quite well it might be helpful to me Mr. me head if you could tell us what evidence it should take to show standing in a case like this well I think at a minimum your honor applying this court's precedent in St. Charles in Zilke in Harris and in FFRF versus Obama what it would take is a plaintiff who says I am offended by this message I have to have direct contact and yet I have incurred special if I understand your position then somebody who is offended by a perceived endorsement and changes their conduct would have standing but somebody who finds that too inconvenient and just gnashes their teeth does not is that right that is precisely what this court held in all of those precedents that I have actually I don't think that's quite right if you look at the Zilke opinion for example we took care to point out that there was no claim of the direct routine contact with the the display in that case for example right well that was one of the things that the court pointed out but the court also pointed out that when it said quote the appellants have failed to meet the minimum requirements of article 3 the appellants concede that they did not alter their excuse me for a minute but I just want to underscore something judge Hamilton just said I know your position is that we don't take any guidance from the American Legion case on this standing point although you embrace it obviously on the merits but in addition to what the Fourth that is entirely about standing so I find it just counterfactual to think that the Supreme Court didn't have standing in front of it they it's not like they put blinders and earplugs in and decided not to pay any attention to justice Gorsuch they were content that on these facts the facts in the American Legion case this kind of forced encounter with the Bladensburg Cross was the American Humanist Association etc etc so you know I just think we want to stick carefully to what the record shows and not get too far in front of ourselves well for reason that reasons that only the Supreme Court knows they chose not to address standing in the controlling opinion in that case and we have certainly the fact that they went ahead and addressed the merits sends us some signal doesn't it actually know that the Supreme Court is very clear in the cases that we cited in our brief that you cannot imply from a sub silentio treatment of the merits that the court actually expressed a position or opinion as to standing matters that were not addressed before the court this isn't really the sub silentio nobody spotted a standing issue there's a lengthy and thoughtful opinion written by one justice joined by a second one that addresses this and so I think contextually that makes American Legion a different kind of case I'm just going to suggest by the way unless one of my colleagues has more questions on standing that perhaps you might move on to the even if they're standing whatever you want to say about the Establishment Clause part of your argument okay so if if standing exists then the course should still reverse because the display here is constitutional in American Legion the court did address the merits and in so doing made clear that long-standing established monuments displays and practices are no longer to be subjected to the lemon test instead they are to enjoy a strong presumption of constitutionality that can be overcome only by a showing of discriminatory intent or by a deliberate disrespect in the design that has if we accept your argument as to the application of American Legion would we have to overrule or some of our existing cases including the American Jewish Congress case I think to the extent that this court had previously relied on lemon or any derivative tests thereof I think that this court is now bound to follow the clear leading of the Supreme Court as have three other circuit courts of appeals that have ruled on these issues since that decision the first the third and the 11th circuits have done so lemon is no longer applicable to long-standing established displays now here this particular display has been around for two decades the plaintiff claims that because the display is only up for six weeks per year that makes it different from a permanent so-called monument or display here's why that doesn't work in this case because the Supreme Court in American Legion when it was cataloging the types of establishment cost cases when it talked about the the displays and the passive displays and and the monuments the first example it gave was Lynch versus Donnelly which involved as we know a nativity scene more importantly we know that the quintessential example of a long-standing established practice is congressional prayer legislative chaplains and we also know from days a year the chaplain only plays praise when the Congress comes into session and there may be months when Congress is not in session when there are no prayers so it's not if we apply American Legion and look at the presumption of constitutionality the presumption applies when a display or monument has been long-standing how do we determine what long-standing is and is it just based on the particular display at issue or the concept of that display that's a yeah I think I think it's both I think number one longevity alone may supply the necessary a long-standing feature that the Supreme Court looks for I'll say this monument this display has been around since 2003 one of the examples the Supreme Court just to be picky is not 20 years it's not 2023 yet right we've said approximately two decades so it's only 15 years but the important thing is when the Supreme Court provides a listing of about four or five examples of religious expressive monuments that it considered to be long-standing one of the ones that refer to was the Pueblo religious leader Pope I and as one of the amici point out in their briefs that was raised in 2005 so it's actually two years younger than the display at issue in this case but beyond that can I ask you is it your view that under American Legion the county is free to go back to a standalone nativity scene display during the holiday season number one the county has no interest in doing that it's never had a standalone display there's always been all of the other components that have been part of this display they were further apart but all on the west lawn of the courthouse they were moved closer together after the complaint came in but if we agree with you would you contend if we agree with you theoretically would a standalone nativity scene in the courthouse lawn be constitutional without Santa or carolers waiting in the wings you're catching me cold because my client has no interest in doing that in a future hypothetical case I'd say you have to look at the four factors that the court has you'd have to look at whether there's discriminatory intent and deliberate disrespect in this design so there may be arguments that could be made in in those veins that a standalone monument perhaps or display perhaps has some of the rebuttal features that the Supreme Court envisioned here again the county has never had a standalone display and has no interest in fact in 2019 the county issued an instructive letter to the Lions Club and the other community groups telling them that that if there's going to be a display in the future it must have at least the same number and type of secular elements around it and it must do so in in perpetuity so there's no claim of that being an issue here we agree with you would with the location of the display matter if the county wanted to move it back and move it into the it was never in the courthouse inside the courthouse there's a Christmas tree and fall presents and Santa Claus up I think the location again you have to look at the four prongs and at the two avenues for for rebuttal and if you have one single solitary nativity scene with nothing else in them in the middle of the the the courthouse atrium perhaps you could make a claim under the the two rebuttal features that the presumption has been rebutted there is room to rebut the presumption we have no facts whatsoever in this case that could do that and I would say to finish answering your earlier question you do also have to look at the longevity of the practice or the display not only in a particular instance but generally in our nation and I think again one of the amici points out that that nativity scenes are older than the Republic traced back all the way to 1741 in the town of Bethlehem Pennsylvania and so there's there's no question that they have taken on a significance that allows communities to celebrate do we look at that for purposes of the presumption or for purposes of analyzing whether it falls whether it violates the Establishment Clause or both well I think you can look at them for for both for purposes of the presumption you you look at it to determine that this is in fact a long-standing tradition and practice that didn't just come up overnight both because an American Legion in looking at the presumption they really seem to focus on the particular statute at issue as opposed to the historical context behind it again just for purposes of the presumption I think they certainly looked at the at the cross that was that issue in that case but they did also take a look at generally speaking in this country how long have crosses been used as war memorials and there's a lot of discussion about tradition even outside of the context of that particular case is it your contention then that nativity scenes have these multicultural multiple layers of meaning that are cultural as distinct from religious it is when they are put together in a display that incorporates all of the other aspects of the holidays this court in the st. Charles the city of st. Charles opinion explained why the nativity scene is different from a cross in a Christmas context and it explained that with a nativity scene it celebrates one aspect of Christmas and that even those who do not adhere or believe in the divinity of the child boarding in Bethlehem could find some comfort and solace in the mere story of that birth taking away the religious elements of from it so that's this court in st. Charles and the Supreme Court in they are accompanied by other elements as they are here where we have Santa the reindeer the sleigh we have all of these candy canes that are actually bigger than most of the the figures including the the manger all of these elements together show that the nativity scene is but one component that reminds us of the origins of the holidays but do not constitute endorsement or expired but thank you very much thank you mr. Falk may it please the court there are no contested facts as to standing here the facts demonstrate that in the course of her everyday life as a member of this community ms. Woodring must confront the area where the nativity display is erected five weeks a year how carefully does she nail that down for those five weeks a year whether it's her visits to the new judicial building or whether it's just the fact that it's u.s. is u.s. 50 that goes a major road in the town I'm sure how carefully does she nail down the times and does that matter I think what matters is that she she testified that in in August of 2019 when her deposition was that year she'd already gone by 35 times and she anticipated continuing at frequency and so we know and so you want us to infer from that favorably to her of course at this stage that that would include times in the month of December and late November when this display is up that's correct she testified she'd be going at the same frequency she anticipated that she had done in the past and that's enough to put her squarely within within books and county of having to confront this as she goes about her everyday life including fulfilling her legal obligations concern and support so I don't think there's any question as to injury in fact and Mr. Falk you also want us to infer from that that by going by the display or by driving by the courthouse that she actually saw the display because the testimony that's that I've seen in the record other than the one 2018 incident doesn't say that she drove by and she saw the display she testified that she moved into the area in the 2016 or 2017 she had not seen the display she heard about the display she saw the display now she knows it is there I think in the book's case the plaintiff testified in this court remarked and it's the first book's opinion that he could have gone a different direction but it didn't make any difference to him because he knew it was there she knows it's there and she's going to go by that area it's quite visible later in the afternoon at dark as our pictures show when it is lit up she knows it is there she is forced to confront that gives her so what about your response the um the county attached various google maps showing that she really doesn't have to go by the display and raises the concern you essentially going to manufacture standing for everybody who goes out of her way to be offended well I think if you're looking at manufactured standing the manufactured standing would be if I call my client up and say look here's their objection she says you mean if I just go one block this way one block that way one block this way that's okay for me to be injured I said I guess that would that would be just as manufactured as this in the course of her everyday life going to the prosecutor's office couponing going shopping going places for her business going on day trips she passes by this area that's what she does that's that's the whole purpose of this form of standing it recognizes that there's injury by being forced to confront something like this that violates the establishment clause can I ask you about a distinction that there the person who knows about the practice take Valley Forge person knows about the practice is simply not engaged enough in it to support article three injury in fact and then there are other cases at the other extreme such as the Elmbrook schools case for example where the person is kind of a forced participant in a religious experience of some kind I want to use a broad word so from that point of view how important is it that she has alleged that she's being drawn into this because she has regular needs of a regular citizen to go to the judicial building that it's in fact very difficult given the layout of this town not to go by the west lawn of the old historic courthouse you know in other words can you make the case that she is a drawn-in participant and not just somebody standing off in the sidelines well certainly that's why I think the test is whether someone in the regular course of their lives in the community must confront the monument in August and in eight months of 2019 she had gone by that area 35 times so let's assume she's going by 50 or 60 times a year she has to do that as a citizen of the community she might be able to take more securities group that's true that would give her standing as well but as a member of that community she is drawn in to the site where this is five weeks a year and that's that's the injury in fact that this court has repeatedly recognized the district court relied on the fact that some of these trips were civic trips to the county prosecutor to collect child support how important is the civic person purpose of her trips to the standing analysis I don't think it's essential uh because if that was the case then no one could challenge something in a park you don't have to go as a matter of civic responsibility in um in county of montgomery this court in distinguishing zelke where that was a 10 commandments monument in a park the court noted that plaintiffs failed to alter their behavior or and i'm quoting demonstrate that they were exposed to the monument during their normal routines or the course of the usual driving or walking again as as judge wood noted the issue is are you drawn into being forced to confront this in the course of your everyday life she hasn't flown in from the west coast take a look and get back on a plane and gone away she sees it she sees the area she knows it's there she's forced to confront it that is her standard but of course she has the added um factor of she has to see it when she goes to pursue her child support obligations in the building behind so to be honest mr falk what worries me more about your side of this case is how in a principled way we can distinguish this particular nativity scene with the secular elements that it has from the bladensberg cross both from an analytical point of view in the american legion case and from the point of view of the the presumption of constitutionality that the court finds uh for at least the bladensberg cross and i i guess there are a lot of questions i have about that but one of them is whether if we got to the presumption of constitutionality what evidence if any is there in this record that the county was intending to discriminate against either people from a different religious tradition or people who have no religious tradition at all as i understand the presumption of constitutionality as set out in the american legion the two areas two places where the court talks about it i don't think we'd be able to rebut the presumption on this record but i don't think we get there your honor because i don't think this is a situation like the long-standing monument in american legion both because this is not long-standing but also because if you look at the four factors that the court stressed is something is sold we can't determine purpose not a problem here new purposes might have occurred over time not a not a problem here and most importantly the court said the message conveyed by that cross was had differed over time it was no longer religious and the reason for that the court said was from the very end of world war one or shortly thereafter the cross had come to symbolize not just christianity but the enormous sacrifice made by american service persons and in fact mr falk with all due respect to justice alito is it really the case that a cross isn't religious i mean maybe it has a mixed message but but the cross strikes me as at seen well the problem the the difference your honor is that in that case and we have to look at what the supreme court said the court said that that cross had very quickly achieved secular components secular points and no one can say that about a question on a crash as this court noted uh in american jewish congress as an unequivocal christian civil yes it's possible to stick a crash in with other things and minimize the endorsement value but in american legion there wasn't an endorsement question the court concluded that that cross was no longer symbolic of christianity in many respects not just the particular cross but generically the court talked about how crosses had become logos for american red cross and trademark no one has made the crash a trademark a crash is a clear religious symbol it always has been it always will be very well may be true but i i guess when you mention endorsement it makes me want to ask you what in your view given you know the addition function that we're able to perform is left of the endorsement test there's a lot of negative commentary in the american legion case about lemon so are you relying on lemon for your argument or do you think you can make it even if we say that lemon is not supported by a majority of the supreme court well the court it does not mention endorsement at all uh in in american legion um and i think what the district court has done um i know there's another district court case the cfi case which said basically if american legion doesn't apply we're going to go talk about endorsement and that's exactly what the district court did the first hurdle that we have of course is explaining why american legion does not apply and as i said it doesn't apply because we're not talking about a long-standing monument which has somehow now currently conveying a message than purely religious so you are you are definitely in response to some of the things judge saint eve was just talking about you are clearly hanging your hat on the fact that this crash is only a little more than 15 years old even though crashes have been around the united states since before there was the united states and indeed around the world for more than a thousand years probably yes yes and arguably this question is only two years old if you multiply five weeks times 17 years if if the county decided to put a new crash down on the courthouse one a permanent crash or a different crash the court would it would seem not apply american legion because the court the majority or the plurality and then justice briar and a separate concurrence both note that different results would occur if this was new relatively what does that mean what does long-standing mean what justice gorsuch said that's a good question plurality does not explain that but this is a temporary display and that makes a difference to your honor it's the court focused in american legion on the fact that this this structure this large structure had become part of the community and to remove it would require destroying ripping it down which would excite and typically obviously from a number of people here we're talking about a number of of metal framed objects that currently i assume are in storage owned by the ministerial association can be easily taken out of storage and placed on one of the many churches in brownstown or on non-public property near the courthouse it's it's excuse me could i ask you whether you might be willing to read american legion as in essence at its core an application of the more familiar endorsement test when we run through those four factors what we're really running through is the details of the history and context of the particular display or monument or practice considered from both insider and outsider perspectives that's i mean that that's a i know that there's a there's a somewhat different analytical framework but it seems to me that that's pretty much what's going on um in justice alito's opinion there room to disagree with for reasonable people to disagree about that reading of the way people have remembered the great war they cite the facel book for example um but it kind of has a feel for the the endorsement test and the van orden verse and and mccreary dichotomy between old and new uh 10 commandment displays well i think that's right i think there's that there's a synthesis of both history and what the objective observer will see now um but again i think the starting point has to be a recognition here that we're talking about a very different scene we're talking about something that a reasonable observer by itself i mean the court has said in in allegheny you put a crash down at a place of public importance it's got its endorsement because let me ask you the the painful question here uh that's that's raised by the uh the last minute motion for a stay for this year um and that is what do you think the county could do to this uh and all under the broader umbrella of american legion uh do we need to start counting elements bringing out measuring tapes what you've said there's a spectrum how far do they have to move on that spectrum to pass muster in your view well obviously for purposes of the state we have not filed a written response to the state the county could just not put up the display that should just put it across the street or put it on a church lawn if if you're saying what has to be done in order for display including crash to be constitutional and whereas not surprisingly the aclu does not have a handbook on that um certainly there's sufficient case law that demonstrates that you have to have something that when someone looks at it will not focus on the religiosity of the display what about can i just add in here i mean maybe it's not just a question of counting candy canes and santa clauses you know maybe there are a lot of towns for example and we've and there have been cases where although there's a crash you know there's a menorah and there are other religious symbols so that the observer will say well this is a country of diverse religions and so no one could think that any one religion was being endorsed it simply acknowledges that this is an aspect of american life has anybody ever asked this town to put up any other kind of religious symbol or is it pretty homogenous it is pretty homogenous the record doesn't reflect that and i don't want to go any further than that than just what the record reflects public information indicates there are no synagogues no mosques in county that that's correct and it does see that um the county uses display as its own even though it is owned by the ministerial association and certainly that's one approach and that was of course why the menorah next to the christmas tree next to the sign outside of the building in county of allegheny was found constitutional because a christmas tree although a symbol of christmas is not deemed to be religious although i'm sure it has some religious overtone so mr falk is it your position here that as long as the crash is in the display that it violates the establishment clause no your honor i cannot argue that given lynch and given the numerous other cases that have recognized that because of what we now call endorsement that that is constitutional but an effort has to be made to completely integrate the display in in the american jewish congress case which predated endorsement but what really is an endorsement test you had a crash display in in the city building in chicago and nearby there were other things you know there are lots of other things but it wasn't to integrate it into the display and the same of course in county of allegheny there were other things in that building besides the crash on the on the steps of the building interior of the building again not enough and i think a reasonable observer would look at the photographs that we have in our brief uh and see that the crash is really its own display even if with the knowledge of history which the reason observer has of course to know that when the county had the opportunity to move santa and move the carolers it made no attempt to integrate that display it made no attempt to interrupt the visual picture that you had standing on main street going into the main entrance of the courthouse the crash remained the centerpiece of the display if the crash was not how should lynch impact this court's analysis after american legion well i think again if we're talking about a crash um we're talking a different ball game than across and certainly in this situation we're talking about something that's not a long-standing display so i i don't think that a um a crash is going it should be viewed the same way but in this case we know we're not talking about a crash so in that position i take it that that the santa and the carolers are just so minor here that we should analyze this as though it were exclusively a crash i think that's what a reasonable observer would receive again exclusive no because they'd see it but i think uh the word the court used in the concord case was the centerpiece the centerpiece of this display is the correct remains by itself on the right hand side of the main entrance sidewalk as the court knows it's arresting visually with the traditional crash figures and the trumpeting angels next to it it is it is a display and i think that survives american legion because american legion does not directly apply and that clearly sends a clear message of endorsement and as i said i i no understand i understand the appellate rules i do have a few more days to file a written response to this state request and i intend to do so thank you all right thank you very much uh mr mehet your time ran out but we had asked you questions so i'll give you a minute to wrap up thank you your honor i would say that the county has already made an effort to integrate the display by bringing everything together before this lawsuit was filed if you look at the pictures you know there's not a way to get them even closer together you know santa claus is already oblivious to social distancing he's right next to uh all of the other uh elements and uh the only way to get him closer would be to put him actually in the manger no case has actually held that i think that mr fox concession that they cannot rebut the presumption under american legion should end uh this uh inquiry i think the supreme court specifically referred to lynch as an example of the type of displays that could be entitled to to this kind of a presumption uh and i i think that that is um evident here i think the court would create a circuit split if it decided that american legion does not apply here and lastly withstanding i would say how would we create a circuit split has anybody else applied american legion to uh this kind of passive religious display yes uh the 11th circuit has applied the american legion to a the bayview cross in the conduct contraptive uh case oh sure well that would i mean that's that looks that's an awful lot like the bladenberg but not not for these holiday displays where we already have a very extensive body of case law right uh not what i natively correct that has not yet been applied but each of the supreme each of the circuits that have applied this have made clear uh that the lemon test no longer applies to passive uh displays and i think that's uh that's the way that american legion goes lastly i would simply say this um the record here does not allow an inference that this particular plaintiff has ever seen this display other than the one time when she purposefully went to inspect it i think that's the kind of manufacturer standing that this court has previously frowned upon um and i think that holding otherwise in this case would open the gates for other inspectors across the state and across the country to start moving around looking for constitutional violations all right i think i think we have your point so thank you very much thank you to mr falk uh the court will take this case under advisement